[Cite as *State v. Sowers*, 2025-Ohio-958.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Robert G. Montgomery, P.J. |
|  | : | Hon. Kevin W. Popham, J. |
| Plaintiff-Appellee | : | Hon. David M. Gormley, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2024-0080 |
| KERRIS SOWERS | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:     Appeal from the Muskingum County Court
of Common Pleas, Case No. CR2024-0235


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     March 19, 2025


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

RON WELCH                              CHRIS BRIGDON
Prosecuting Attorney                    8138 Somerset Road
27 North Fifth St., Box 189             Thornville, OH 43076
Zanesville, OH 43702

*Popham, J.*

**{¶1}**    Appellant Kerris Sowers appeals the judgment entered by the Muskingum County Court of Common Pleas convicting and sentencing her following her pleas of guilty.  Appellee is the State of Ohio.

*Facts & Procedural History*

**{¶2}**    On April 9, 2024, at 9:30 p.m., appellant called 911 to report a domestic incident at 236 Main Street in Duncan Falls.  Appellant indicated she and the victim, T.T., had been in a relationship for six weeks, and they lived together at that location for three or four weeks.

**{¶3}**    T.T. reported that he and appellant argued about whether they were going to go out that night.  Appellant began packing her items in the upstairs bedroom while T.T. paced back and forth.  This made appellant angry, so T.T. went downstairs to wait for her.  Appellant then began yelling that she was going to destroy all of T.T.'s things, so he went back upstairs.  Appellant picked up a PlayStation to throw it, but T.T. took it from her.  T.T. threw some of appellant's clothes out the window.  In response, appellant told T.T. she would "call her homies and have him beaten up."

**{¶4}**    At that point, appellant picked up a hunting knife and began swinging it around.  She threatened to stab T.T.  While holding the knife, appellant threw T.T.'s television and PlayStation on the ground and stomped on them.  Appellant grabbed T.T. by the wrist and, while she was holding his wrist, she pulled the knife back with her other hand as if she was going to stab him.  T.T. pulled away.  This left scratches on his hands.  T.T.'s dog bit appellant on the leg, but it did not break the skin.

{¶5} Appellant went downstairs, threatening to damage T.T.'s car. She again swung the knife at him and threatened him. Appellant then went outside and held the door shut from the outside. T.T. was inside and he could not get out of the house. When appellant eventually let go of the door, T.T. discovered she had slashed all four of the tires on his car. Appellant told T.T. that is what he gets for "messing with a crazy bitch."

{¶6} Appellant ran back into the house. T.T. heard sirens and waited outside for the police to arrive. Appellant was belligerent and uncooperative with the deputies; however, the deputies allowed her to collect her belongings and leave the scene, going to her apartment on Robin Court.

{¶7} While the deputies were speaking to T.T., he reported appellant had stolen his Glock, the case, and three magazines. The deputies went to appellant's apartment on Robin Court. Appellant denied taking the gun. Appellant's apartment faces the woods. Before she walked around to the parking lot where the deputies were, the deputies heard a thud in the woods. Appellant was again belligerent with the deputies and was handcuffed. Deputies then found the gun, magazines, and case in the woods, approximately ten yards from appellant's apartment.

{¶8} When appellant was questioned at the police station, she denied taking the gun. However, she admitted she knew of the gun, admitted she shot the gun, and admitted she was under disability from a previous burglary conviction in 2021.

{¶9} Appellant informed the officers she took a video of part of the incident on her phone, but would not provide the phone because she thought it would be used against her. When she was in the interview room, the officer told her she was being arrested. Appellant refused to put her hands behind her back, threw her phone across the room,

and ran into the table. Appellant was eventually handcuffed, but continued her erratic behavior at the jail.

{¶10} Appellant was charged by the Muskingum County Grand Jury in a 14-count indictment. The charges were as follows: (1) Count 1 – domestic violence, in violation of R.C. 2919.25(C) and (D)(2), a misdemeanor of the fourth degree; (2) Count 2 – falsification, in violation of R.C. 2921.13(A)(2) and (F)(1), a misdemeanor of the first degree; (3) Count 3 – aggravated robbery in violation of R.C. 2911.01(A)(1) and (C), a felony of the first degree, with a repeat violent offender specification due to a previous burglary conviction in May of 2021; (4) Count 4 – kidnapping, in violation of R.C. 2905.01(A)(3) and (C)(1), a felony of the first degree, with a repeat violent offender specification; (5) Count 5 – domestic violence, in violation of R.C. 2919.25(A) and (D)(2), a misdemeanor of the fourth degree; (6) Count 6 – grand theft (due to the property being a firearm), in violation of R.C. 2913.02(A)(1) and (B)(4), a felony of the third degree, with a firearm specification; (7) Count 7 – tampering with evidence, in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree, with a firearm specification; (8) Count 8 – having weapons while under disability, a violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree; (9) Count 9 – having weapons while under disability, in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree; (10) Count 10 – having weapons while under disability, in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree; (11) Count 11 – tampering with evidence, in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree; (12) Count 12 – resisting arrest, in violation of R.C. 2921.33(A) and (D), a misdemeanor of the second degree; (13) Count 13 – obstructing official business, in violation of R.C. 2921.31(A) and (B), a misdemeanor of the second

degree; and (14) Count 14 – assault, in violation of R.C. 2903.13(A) and (C), a felony of the fourth degree. The State of Ohio subsequently amended Count 4 to attempt to commit an offense (kidnapping), in violation of R.C. 2923.02(A), a felony of the second degree.

{¶11} Pursuant to a plea agreement, appellant pled guilty to Count 1, amended Count 4, Count 6, and Count 7. The remaining charges were dismissed by appellee. The repeat violent offender specification attached to amended Count 4 and the firearm specification attached to Count 7 were also dismissed by appellee. Both parties reserved the right to argue for the sentence they felt was appropriate at the sentencing hearing. The parties also stipulated that the counts do not merge.

{¶12} The trial court held a sentencing hearing on July 1, 2024. Appellee argued for a fifteen-year sentence, highlighting appellant's previous conviction for burglary in 2021 during which she severely beat another young woman, and highlighting the numerous jail incidents appellant had while incarcerated. Counsel for appellant argued for a three-year, nine-month jail term (the minimum the trial court could impose), stating appellant is young, and arguing this incident was a domestic dispute with no significant injury to the victim.

{¶13} Appellant spoke on her own behalf. She stated she used the knife because the dog bit her. She also described the trauma she experienced, but stated she is committed to working on her mental health. Appellant also apologized for her actions.

{¶14} The trial court sentenced appellant to an aggregate term of incarceration of eight to eleven years (six-year mandatory sentence for attempt to commit an offense (kidnapping), one-year mandatory sentence for each third-degree felony to be served concurrently with each other but consecutively to the six-year sentence, and a one-year

mandatory consecutive sentence for the firearm specification). In a July 1, 2024, judgment entry, the trial court stated it considered the plea recommendation, the purposes and principles contained in R.C. 2929.11, and the balance of seriousness and recidivism factors under R.C. 2929.12.

{¶15} Appellant appeals from the July 1, 2024, judgment entry of the Muskingum County Court of Common Pleas, and assigns the following as error:

{¶16} "I. WAS THE SENTENCE IMPOSED IN CONTRAVENTION OF THE SENTENCING STATUTES R.C. 2929.11 AND R.C. 2929.12."

I.

{¶17} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Roberts*, 2020-Ohio-6722 (5th Dist.), citing *State v. Marcum*, 2016-Ohio-1002. R.C. 2953.08 provides we may either increase, reduce, modify, or vacate a sentence and remand for sentencing where we clearly and convincingly find either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C)(4), or R.C. 2929.20(I), or the sentence is otherwise contrary to law. *Id.*, citing *State v. Bonnell*, 2014-Ohio-3177.

{¶18} Nothing in R.C. 2953.08 permits this Court to independently weigh the evidence in the record and substitute our own judgment for that of the trial court to determine a sentence which best reflects compliance with R.C. 2929.11 and R.C. 2929.12. *State v. Jones*, 2020-Ohio-6729. Instead, we may only determine if the sentence is contrary to law. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post-release control, and sentences

the defendant within the permissible statutory range." *State v. Pettorini*, 2021-Ohio-1512 (5th Dist.), quoting *State v. Dinka*, 2019-Ohio-4209, ¶ 36 (12th Dist.).

{¶19} When sentencing a defendant, the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11, and the seriousness and recidivism factors in R.C. 2929.12. *State v. Taylor*, 2024-Ohio-238 (5th Dist.).

{¶20} "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. *Id.* Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶21} R.C. 2929.12 lists general factors which must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion, but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

**{¶22}** In this case, the judgment entry states the trial court considered the principles and purposes of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors under R.C. 2929.12. At the sentencing hearing, the trial court noted appellant's recent burglary conviction in 2021, and also referenced numerous incidents involving appellant at the jail, some of which resulted in new charges against appellant. Further, the sentence imposed by the trial court is within the statutory guidelines. Appellant argues the minimum sanctions to achieve the purpose of R.C. 2929.11 contradicted the sentence received and that the trial court failed to adequately consider factors such as appellant's young age, the lack of seriousness of the offense, appellant's commitment to working on her mental health, and appellant's expression of remorse. While appellant may disagree with the weight given to the R.C. 2929.11 and R.C. 2929.12 factors by the trial judge, we have no basis for concluding the sentence in the instant case is clearly and convincingly contrary to law.

**{¶23}** Appellant next argues the sentence in this case is disproportionate to the offenses committed, based upon the discrepancy between the sentence recommended by trial counsel for appellant and the sentence imposed by the trial court. Appellant also cites her young age and her remorse in support of her argument.

**{¶24}** Cases violating the Eighth Amendment's prohibition on cruel and unusual punishment "are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person," and the "penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *State v. Hairston*, 2008-Ohio-2338, ¶ 14, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 69, 70 (1964). Proportionality review should focus on individual sentences, rather than on

the cumulative impact of multiples sentences imposed consecutively. *Id.* at ¶ 20. "Where none of the individual sentences imposed on an offender are so grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *Id.* As a general rule, a sentence falling within the terms of a valid statute cannot amount to a cruel and unusual punishment. *Id.* at ¶ 21.

{¶25} Appellant does not argue any of her individual sentences are disproportionate to the offenses committed. Each of the individual sentences was within the statutory range, and the maximum sentence was not imposed in any of the counts. The trial court also rejected counsel for appellee's argument that the court should impose the maximum sentence of fifteen years in prison. We find the penalties imposed in the instant case are not so greatly disproportionate to the offenses appellant committed as to shock the sense of justice of the community.

{¶26} Appellant also contends the trial court "did not discuss" the impact of the factors contained in R.C. 2929.12. However, R.C. 2929.12 does not require the trial court to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Although there is a mandatory duty to "consider" the relevant statutory factors under R.C. 2929.11 and R.C. 2929.12, the sentencing court is not required to engage in any factual findings under these statutes. *State v. Chapman*, 2023-Ohio-2108 (5th Dist.).

**{¶27}** We conclude the trial court did not commit error when it sentenced appellant. Upon review, we find the trial court's sentencing complies with applicable rules and sentencing statutes. Appellant's assignment of error is overruled.

**{¶28}** The judgment entry of the Muskingum County Court of Common Pleas is affirmed.

By Popham, J.,

Montgomery, P.J., and

Gormley, J., concur